*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0310p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

DRFP L.L.C., dba SKYE VENTURES,
　　　　　　　　　　*Plaintiff-Appellee,*

　　　　*v.*

THE REPUBLICA BOLIVARIANA DE
VENEZUELA; THE VENEZUELAN MINISTRY OF
FINANCE,
　　　　　　　　　　*Defendants-Appellants.*

Nos. 09-3424/3725

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 04-00793—John D. Holschuh, District Judge.

Argued: June 9, 2010

Decided and Filed: September 23, 2010

Before: MARTIN, RYAN, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Jay Kelly Wright, ARNOLD & PORTER LLP, Washington, D.C., for Appellants. Charles H. Cooper, Jr., COOPER & ELLIOTT, LLC, Columbus, Ohio, for Appellee. **ON BRIEF:** Jay Kelly Wright, Robert A. Schwartz, Brandie N. Weddle, ARNOLD & PORTER LLP, Washington, D.C., Daniel W. Costello, David S. Bloomfield, Jr., PORTER, WRIGHT, MORRIS & ARTHUR LLP, Columbus, Ohio, for Appellants. Charles H. Cooper, Jr., Rex H. Elliott, John C. Camillus, COOPER & ELLIOTT, LLC, Columbus, Ohio, for Appellee.

　　RYAN, J., delivered the opinion of the court, in which KETHLEDGE, J., joined. MARTIN, J. (pp. 12-17), delivered a separate opinion concurring in part and dissenting in part.

1

---

**OPINION**

---

RYAN, Circuit Judge.  This case presents questions concerning federal courts' jurisdiction over foreign nations and the doctrine of *forum non conveniens*.

DRFP L.L.C., doing business as Skye Ventures, is the holder of two promissory notes allegedly issued by the government of Venezuela.  Skye demanded payment on the notes, and when it was refused, Skye filed suit against Venezuela and its Ministry of Finance in the federal district court in Columbus, Ohio.  Venezuela sought dismissal of the case, claiming immunity from United States federal court jurisdiction and the defense of *forum non conveniens*.  The district court held that dismissal was not warranted because Venezuela was not immune from jurisdiction by virtue of the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602, and that the doctrine of *forum non conveniens* did not apply.  Venezuela now appeals.

For reasons we shall explain, we will hold that Venezuela is not immune from federal court jurisdiction, but that the district court must reconsider the *forum non conveniens* question.

**I.**

According to the plaintiff's complaint, on December 7, 1981, a state-owned bank in Venezuela, the Banco de Desarrollo Agropecuario, issued some no-coupon bearer promissory notes.  The notes stated that they were payable to the holder ten years and one day after the date of issue, although the maturity date was later extended to December 1999.  The notes also stated that the Venezuelan Ministry of Hacienda (the precursor to the Ministry of Finance) guaranteed payment of the notes, and that the government of Venezuela backed the notes.

A Panamanian corporation, Gruppo Triad-FCC SPA, acquired the two promissory notes with which we are concerned in this case, each in the amount of $50

million.   After Gruppo demanded payment on the notes in 2001, the Venezuelan Ministry of Finance conducted an investigation into their validity.  In October 2003, the Venezuelan Attorney General issued an opinion declaring that the notes were valid. Based on this opinion, the plaintiff, Skye, an Ohio limited liability company whose principal office is in Columbus, Ohio, obtained the two notes from Gruppo and demanded payment of the notes at its office in Columbus.  When Venezuela refused to honor the notes on the ground that the instruments were forgeries, Skye filed suit to collect on the notes in the federal district court in Columbus.

On January 31, 2005, while continuing to insist that the notes were invalid forgeries, Venezuela filed a motion requesting dismissal of the case on two grounds: (1) lack of jurisdiction due to sovereign immunity and (2) *forum non conveniens*. Without deciding the motion, the magistrate judge ordered that discovery proceed, and the motion remained undecided for four years.  On July 24, 2007, Venezuela notified the district court that the Venezuelan Supreme Court had issued a decision that affected the issues in the case.  The magistrate judge then modified his earlier order concerning discovery and, on May 27, 2008, directed the parties to file supplemental briefs addressing the issues of sovereign immunity and *forum non conveniens*.

On February 13, 2009, the district court issued an opinion denying Venezuela's motion to dismiss.  Specifically, the district court held:  (1) that Venezuela was not immune from suit pursuant to the FSIA's commercial activity exception and the court had jurisdiction of the case; and (2) that the doctrine of *forum non conveniens* did not apply.

## II.

Despite Venezuela's insistence that the notes are forgeries, we must assume, for purposes of deciding the jurisdictional issues before us, that they are valid.

We review questions of subject matter jurisdiction, including issues of sovereign immunity, *de novo*. *O'Bryan v. Holy See*, 556 F.3d 361, 372 (6th Cir.), *cert. denied*, 130 S. Ct. 361 (2009).

Generally, a foreign state is immune from suit in the United States. *Republic of Iraq v. Beaty*, 129 S. Ct. 2183, 2186 (2009). The FSIA, however, sets out several statutory exceptions to jurisdiction, including the "commercial activity exception" of Section 1605(a)(2). *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537-39 (6th Cir. 2007). The FSIA provides, in part:

> **(a)** A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> . . . .
>
> **(2)** in which the action is based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere *and that act causes a direct effect in the United States*.

28 U.S.C. § 1605(a)(2) (emphasis added). The party claiming an exception to immunity bears the burden of production to demonstrate that an exception applies. *Keller v. Cent. Bank of Nigeria*, 277 F.3d 811, 815 (6th Cir. 2002). The party asserting immunity bears the ultimate burden of persuasion. *Id.* Here, the district court held that the commercial activity exception to Venezuela's immunity applied to the facts of this case, and that the district court would exercise jurisdiction.

It is undisputed that Venezuela is a foreign state normally entitled to sovereign immunity. The parties do not dispute that the activities involving the two promissory notes can be characterized as a "commercial activity." 28 U.S.C. § 1605(a)(2). The dispositive question at this stage of the case is whether the "commercial activity of the foreign state" caused a "direct effect in the United States." *Id.*

There are really two aspects to the "direct effect" question. The first is whether the bearer of the notes, Skye, is restricted by contract or by the terms of the notes in selecting the United States as a jurisdiction in which to seek and enforce payment of the

notes. The second is whether, if Skye is not precluded from demanding that payment be made in the United States, the defendants' refusal to honor Skye's demand for payment in Ohio is an "act [that] causes a direct effect in the United States." *Id.* Our answer to the first question is no, and to the second, yes.

Both notes explicitly state that the terms and conditions of the notes are governed by the law of Switzerland and "by the regulations of the International Chamber of Commerce in Paris and the United States Council of the International Chamber of Commerce [(ICC)] Brochure '322' last revised edition." Skye introduced the affidavit of an expert, Professor Marco Villa, a Swiss lawyer, whose qualifications to testify as to Swiss law were not challenged by the defendants. Professor Villa, after examining the two promissory notes, testified that under Swiss law, and the ICC Rules on Collection which are recognized under Swiss law, the bearer of the notes may sue for collection in the jurisdiction of his choice, including the United States of America.

Another witness, Gary Post, accepted by the district court as qualified to give an opinion as to "the ICC's regulations in its Rules on Collection," stated in an affidavit that in his opinion, the ICC regulations permit Skye to seek collection on the notes in the jurisdiction of its choice, including Ohio. *DRFP L.L.C. v. Republica Bolivariana de Venezuela*, No. 2:04-cv-793, 2009 WL 414581, at *8 (S.D. Ohio Feb. 13, 2009). Therefore, it would appear that by the terms of the notes, including the provision that Swiss law govern any dispute over terms and conditions, Skye was entitled to demand and enforce payment in Ohio.

The second aspect of Venezuela's immunity argument—the question whether Venezuela's refusal to honor Skye's demand for payment in Ohio caused a direct effect in the United States—is at the heart of the parties' dispute.

In ruling that Venezuela's refusal to honor the promissory notes caused a direct effect in the United States, the district court relied on the Supreme Court case of *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992). In *Weltover*, the Supreme Court stated that "an effect is direct if it follows as an immediate consequence of the

defendant's . . . activity." *Id.* at 618 (internal quotation marks and citation omitted). The Court rejected any requirement that the effect be either foreseeable or substantial. *Id.*

In *Weltover*, Argentina issued bonds, and the bondholders designated New York as one place where payment could be made. *Id.* at 607. When Argentina refused to pay and "rescheduled" the bonds, the bondholders sued to collect. The Supreme Court concluded that Argentina's refusal to pay caused a "direct effect" in the United States. The Court explained: "Because New York was thus the place of performance for Argentina's ultimate contractual obligations, the rescheduling of those obligations necessarily had a 'direct effect' in the United States: Money that was supposed to have been delivered to a New York bank for deposit was not forthcoming." *Id.* at 619. Skye argues that the analysis in *Weltover* can be directly applied to the circumstances of this case.

To add weight to its argument, Skye cites *Woodsrite Investments Ltd. v. Gruppo Triad-FFC-SPA-Panama*, a case from Switzerland involving similar Venezuela promissory notes. At our request, the parties have submitted additional supplemental briefing on the *Woodsrite* case. After a review of the *Woodsrite* case, we are not persuaded to follow the case, as it is a decision from a foreign jurisdiction which based its final ruling on the unrelated procedural question of timeliness. The *Woodsrite* case's consideration of the immunity issue was not the central holding of the case. We therefore disagree with Skye's position regarding the preclusive effect of the *Woodsrite* decision.

In opposition, Venezuela argues that the commercial activity exception of Section 1605(a)(2) does not apply because the terms of the promissory notes do not create a contractual right to compel payment of the notes in the United States. Venezuela attempts to distinguish the *Weltover* case by arguing that the foreign state in *Weltover* had more connections to the United States than Venezuela had in this case: for example, the foreign state in *Weltover* specifically designated New York as a possible place of payment. Venezuela contends that Skye is claiming jurisdiction based solely

on Skye's pre-suit demand for payment, and nothing more, and that this is insufficient to establish the commercial activity exception. We find this argument unpersuasive.

Certainly neither the terms of the notes nor any other contractual arrangement between the parties explicitly designated the United States as the place of payment of the notes. But as we have explained, under the terms of the notes, including the provision that Swiss law will be applied, the parties implicitly agreed to leave it to the bearer to demand payment of the notes anywhere, including, perforce, Columbus, Ohio, the bearer's place of business. We do not read *Weltover* as creating an additional requirement that the United States be specifically mentioned in the terms of the notes, as suggested by Venezuela. The Second Circuit Court of Appeals came to a similar conclusion in *Hanil Bank v. PT. Bank Negara Indonesia (Persero)*, 148 F.3d 127 (2d Cir. 1998), where the court found that although a letter of credit did not specifically designate New York as the place of payment, the parties had implicitly agreed that the bank could designate the place of its choice for payment. *See id.* at 132.

We agree with the district court that the cases cited by Venezuela in support of its position are distinguishable. In *American Telecom*, 501 F.3d 534, this court's ruling was simply that including or excluding an American company from bidding for a telephone network in Lebanon does not cause a direct effect in the United States. *Id.* at 541. The other cases cited by Venezuela (*Morris v. People's Republic of China*, 478 F. Supp. 2d 561, 570-71 (S.D.N.Y. 2007); *Global Index, Inc. v. Mkapa*, 290 F. Supp. 2d 108, 114-15 (D.D.C. 2003); *Falcon Invs., Inc. v. Republic of Venezuela*, No. 00-4123, 2001 WL 584346, at *5 (D. Kan. May 22, 2001)), besides being trial court cases from other circuits, are also distinguishable because, although they involve instances in which a place of payment in the United States was not specified in the notes or other obligations, they are not cases in which the court found that there was a provision implicitly permitting the note holder to designate a place of payment, as is the case here.

In short, we hold that Skye had the right to designate the United States as a place of payment of the notes. Skye designated Columbus, Ohio, and when Venezuela refused

to pay the promissory notes, money that was supposed to have been delivered to Skye at its office in Columbus was not forthcoming, causing a direct effect in the United States. *See Weltover*, 504 U.S. at 619. Therefore, Skye has successfully satisfied its burden of production in establishing that the commercial activity exception of Section 1605(a)(2) of the FSIA applies, and Venezuela has not carried its burden of persuasion that the exception does not apply.

## III.

Venezuela claims that the district court erred in denying its motion to dismiss on *forum non conveniens* grounds.

A district court's denial of a motion to dismiss for *forum non conveniens* is generally reviewed for an abuse of discretion. *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 215 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1689 (2010), *and cert. denied*, 130 S. Ct. 1713 (2010). Venezuela argues, however, that since the district court rejected the *forum non conveniens* argument on the purely legal basis that there was no "available and adequate alternative forum," which is the first part of the *forum non conveniens* analysis, the proper standard of review is *de novo*. *See Murray v. British Broad. Corp.*, 81 F.3d 287, 292 (2d Cir. 1996). We agree with Venezuela and conduct a *de novo* review.

"[A] plaintiff's choice of forum should rarely be disturbed." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). However, a dismissal of a case for *forum non conveniens*

> is appropriate when the defendant establishes, first, that the claim can be heard in an available and adequate alternative forum and, second, that the balance of private and public factors listed in *Gulf Oil [Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)], reveals that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court.

*Duha v. Agrium, Inc.*, 448 F.3d 867, 873 (6th Cir. 2006).

Skye argued in the district court, and argues here, that Venezuela's courts cannot provide "an available and adequate alternative forum" because a 2007 decision of the Venezuela Supreme Court has foreclosed Skye's right to litigate its case. Some background is necessary to understand Skye's argument and Venezuela's response.

In an opinion issued in October 2003 and addressed to the Venezuelan Ministry of Finance, the Venezuelan Attorney General stated that the notes involved in the case were valid. Although the Attorney General withdrew the opinion within weeks of its issuance, assertedly based upon "new evidence," Skye's litigating position has been that by reason of the opinion declaring the notes valid, the defendants are now estopped from asserting they are not.

In the meantime, in July 2007, the Venezuelan Supreme Court issued an "interpretative opinion," as permitted under the Venezuelan Constitution, declaring that Attorney General opinions of the kind issued in 2003 and relied upon by Skye are not final and binding determinations of the rights of private claimants, but are "merely consultative" opinions "incapable of creating subjective rights on the part of private individuals." *Decision of the Constitutional Chamber of the Supreme Court of Venezuela*, Nos. 07-0068/0501 (July 12, 2007) (Translation of Venezuelan Supreme Court Opinion at District Court Docket Entry #118-3, p.23). With that, Skye argues, it is now precluded from arguing that Venezuela is estopped from claiming the notes are invalid. With the loss of its estoppel theory, Skye argues further, it "would not be permitted to litigate the subject matter of its dispute [in a Venezuelan court], and the Republic of Venezuela therefore is not an 'available' forum." The district court agreed. The court stated that Venezuela is not "an available and adequate alternative forum" for *forum non conveniens* purposes because in eliminating Skye's estoppel argument (at least in Venezuela), the Venezuelan Supreme Court "effectively decided the issue of the Notes' validity against the Plaintiff in the present case." *DRFP L.L.C.*, 2009 WL 414581, at *12. The district court went on to explain that since "[t]he Venezuelan courts have addressed the exact factual scenario presented by this case and have conclusively

decided an issue central to Plaintiff's case adversely to Plaintiff's stated position[,] . . . Venezuela is not available to Plaintiff as a forum in which to litigate its case." *Id.*

We think the district court has read too much into the Venezuelan Supreme Court opinion. We read the Supreme Court's opinion as limited, as we have said, to the holding that certain Attorney General opinions, including those issued in 2003 in this dispute, are not binding on private parties and are subject to change. Neither the first Attorney General opinion (that the notes are valid) nor the second (that the notes are not valid) is settled law in Venezuela binding the parties to this litigation. The Venezuelan Supreme Court's opinion says nothing that has the effect of denying Skye the right to litigate the subject matter of the lawsuit in Venezuela.

The requirement of an available and adequate alternative forum is ordinarily "satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft*, 454 U.S. at 254, n.22 (quoting *Gilbert*, 330 U.S. at 506-07). "[D]ismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute." *Id.* The district court found that for practical purposes Venezuela does not permit litigation on the subject matter of the dispute because it gutted Skye's case by foreclosing its estoppel theory. In support of its ruling, the district court cited to the case of *Norex Petroleum, Ltd. v. Access Indus., Inc.*, 416 F.3d 146 (2d Cir. 2005). In *Norex*, the Second Circuit Court of Appeals found that a forum was unavailable because the possibility of litigating the plaintiff's claim was entirely precluded by a prior default judgment. *Id.* at 159-60. We think *Norex* is distinguishable because unlike the circumstances in *Norex*, Skye is not precluded from litigating its claims in Venezuelan courts. Even if the Venezuelan Supreme Court decision can properly be read as eliminating Skye's claim of estoppel, and we emphatically do not express an opinion about that, such a ruling would weaken Skye's case in Venezuela, but that is not the same as denying Skye the right to litigate the subject matter of the dispute.

Moreover, Venezuela presented an affidavit provided by Professor Carlos Enrique Mouriño Vaquero, apparently accepted by both sides as an authority on

Venezuelan law, supporting the position that Venezuela is an available forum for claims made against the government of Venezuela. The availability of the administrative and judicial procedures in Venezuela, as described in the affidavit, is not contested. A forum is not unavailable merely because the law applied in that forum is less favorable to a plaintiff than the law of the plaintiff's chosen forum. *Piper Aircraft*, 454 U.S. at 250. The fact that the law in Venezuela *may* not be favorable to Skye, based on the current legal precedents following the July 2007 Venezuelan Supreme Court decision, does not render the administrative and judicial procedures in Venezuela unavailable and inadequate as a matter of law. Skye is not precluded from litigating its claims in the Venezuelan courts, and the district court's ruling to the contrary was mistaken.

Because the district court's ruling was based upon the first part of the *forum non conveniens* rule, the court did not reach the second step of the analysis, the balancing of private and public interests. We express no opinion with regard to the correct resolution of this second step and we remand the case to the district court for a full consideration of the question whether the doctrine of *forum non conveniens* applies.

## IV.

We **AFFIRM** the district court's judgment on the issue of sovereign immunity, **REVERSE** its judgment on the issue of *forum non conveniens*, and **REMAND** for further proceedings consistent with this opinion.

---

## CONCURRING IN PART AND DISSENTING IN PART

---

BOYCE F. MARTIN, JR., Circuit Judge, concurring in part and dissenting in part. While I concur in full with the majority's reasoning and holding on the issue of *forum non conveniens*, I must disagree with its holding on the issue of jurisdiction over this claim.

The facts of this case are extraordinarily complicated. Essentially, Skye, an American corporation, went abroad and purchased Venezuelan notes, known as "Bandagro notes," from a Panamanian corporation, Gruppo Triad, and demanded payment from Venezuela in Columbus, Ohio. Venezuela did not pay. The district court found that this constituted a sufficient "direct effect" on United States commerce to create federal jurisdiction and defeat sovereign immunity. The majority affirms the holding of the district court, and I respectfully dissent.

The Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1602-11, "grants federal district courts jurisdiction over civil actions against foreign states 'as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity' under either another provision of the FSIA or 'any applicable international agreement.'" *Republic of Austria v. Altmann*, 541 U.S. 677, 681 (2004) (quoting 28 U.S.C. § 1330(a)). Essentially, the court first presumes immunity, pursuant to section 1604, but looks for an exception, found in sections 1605-07; then, only if the court finds that the "foreign state is not entitled to immunity" will the court have subject matter jurisdiction, pursuant to section 1330(a).

Skye contends that the "commercial activity exception" to the FSIA divests Venezuela of foreign sovereign immunity. That exception states, in pertinent part:

> A foreign state shall not be immune from the jurisdiction of courts of the
> United States or of the States in any case . . . in which the action is based
> . . . upon an act outside the territory of the United States in connection

with a commercial activity of the foreign state elsewhere *and that act causes a direct effect in the United States*.

28 U.S.C. § 1605(a)(2) (emphasis added). "[A]n effect is direct if it follows as an immediate consequence of the defendant's activity." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992). "Of course the generally applicable principle de minimis non curat lex ensures that jurisdiction may not be predicated on purely trivial effects in the United States. But we reject the suggestion that § 1605(a)(2) contains any unexpressed requirement of 'substantiality' or 'foreseeability.'" *Id.*[1] In *Weltover*, the Supreme Court held that there was a direct effect when the Argentinian bonds specified for payment locations, one of which was New York, and Argentina had begun making payments to the plaintiffs in New York before unilaterally rescheduling its debts and suspending payments. *Id.*

We recently held that "the mere act of including an American company in or excluding an American company from the process of bidding on a contract, where both parties' performance is to occur entirely in a foreign locale, does not, standing alone, produce an immediate consequence in the United States, and thus does not have a direct effect in the United States. *Am. Telecom Co.*, 501 F.3d at 541. We also held that, "even if [the payment of $30,000 from an American bank to enter a bid] produced a direct effect, that effect was not *caused* by [the country]. American Telecom was not required to submit payment from an American bank; it chose to do so, and to the extent that making that payment had a direct effect in the United States, the effect was the direct result of American Telecom's action, not [the country's]." *Id.* (emphasis in original).

In this case, Skye, an American corporation, went abroad and purchased Venezuelan notes from a Panamanian corporation, Gruppo Triad. Skye then brought the bonds to a bank in Columbus, Ohio and demanded payment. Venezuela refused to pay. That Skye chose to use an American bank from which to request payment is not

---

[1]This Court has rejected the "legally significant act" test that is required in the Eighth, Ninth, and Tenth Circuits, and expressly renounced in the Fifth Circuit. *See Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 540 (6th Cir. 2007) (citing *Keller v. Cent. Bank of Nigeria*, 277 F.3d 811 (6th Cir. 2002)).

sufficient to defeat sovereign immunity under *American Telecom*. If it were sufficient, everyone would request payment here so as to gain access to local federal courts. Thus, I agree with the majority that the pre-suit demand for payment is not enough to create federal jurisdiction and defeat sovereign immunity.

However, this does not end the inquiry. The note itself may create federal jurisdiction in the United States and concede sovereign immunity by expressly stating a place of performance in the United States, *see Weltover*, 504 U.S. at 618, or by not specifying a place of performance but instead expressly granting the plaintiff the right to choose the place. In that case, if the plaintiff designates the United States, then failure to pay can constitute a direct effect. *See, e.g.*, *Keller v. Cent. Bank of Nigeria*, 277 F.3d 811, 818 (6th Cir. 2002) (plaintiff was to set up escrow account for payment anywhere); *Hanil Bank v. PT. Bank Negara Indonesia*, 148 F.3d 127, 132 (2d Cir. 1998) (plaintiff "was entitled under the letter of credit to indicate how it would be reimbursed, and it designated payment to its bank account in New York"). However, if the bond is silent on the place of performance, then there is no basis for United States jurisdiction over ensuing claims, even if the injury is somehow felt in the United States. *See, e.g.*, *Big Sky Network Canada, Ltd. v. Sichuan Provincial Gov't*, 533 F.3d 1183, 1191 (10th Cir. 2008) (no jurisdiction where "the joint venture did not require any action in the United States, the failure of which to occur could constitute a direct effect"); *Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d 83, 91 (D.C. Cir. 2005) (no direct effect where "Saudi Arabia 'might well have paid' [the American plaintiff] or another employee in the United States 'but it might just as well have done so' outside the United States").

Here, it is undisputed that the Notes did not expressly state a place of performance in the United States and that they do not specifically state that their holder can demand payment in the United States. However, the parties dispute whether the Notes grant the holder the right to state the place of performance and specifically on what the concept of a "place of payment" means.

I find this issue to be most clearly crystalized in the dueling translations of a case from a Swiss court that examined Bandagro bonds, including those at issue here, to determine whether jurisdiction over Venezuela existed in Switzerland, that were submitted by the parties here.[2] *Woodsrite Investments Ltd. v. Gruppo Triad, et al.*, File No. OA200487 (District Court of Mendrisio Sud, Canton of Ticino, Switzerland) (R.E. 137-1 and 137-2). Venezuela purports that the relevant paragraph of *Woodsrite* is accurately translated:

> In addition to the above, there is no connection between the legal business regarding the promissory notes, as well as the guarantee they represent, and Switzerland; and, since the legal relationship has no connection with the Swiss territory, it would seem, according to what has been stated, that the securities can be redeemed anywhere, and paid in any requested currency.

(Affidavit of Aura Colmanni, July 26, 2010, at 3). On the other hand, Skye purports that the relevant section is most accurately translated as:

> The BANDAGRO promissory notes make express reference to the applicability of Swiss law and according to the rules of issue, which refer to the ICC rules, they may be called for payment in any part of the world. . . . Indeed, the court fails to see how the connection with Switzerland cannot be established, because payment of the notes, in accordance with the clauses they contain, is requested in the place in which they are found, by bringing an action before a Swiss court which must apply Swiss law.

(Skye's letter brief, July 1, 2010, at 2). If I did not know better, I would assume that these were translations from two different cases. As presented here, they demonstrate

---

[2]The Notes state that they are governed by the laws of Switzerland and the ICC Brochure 322. The district court found that this means that the "Notes clearly include the United States as a place of payment because of Bandagro's agreement that its obligations under the Notes, which would include the obligation to make payment, will be governed and construed in accor[d]ance with the laws of Switzerland and by the regulations of the [ICC]." *DRFP LLC v. Republica Bolivariana de Venezuela*, No. 2:04-cv-793, 2009 WL 414581, at *7 (S.D. Ohio Feb. 13, 2009). Skye's expert testified that "there is no prohibition under Swiss law denying a creditor the right to initiate a demand for payment through the ICC Uniform Rules for Collection Process." This expert's affidavit also stated that the Notes could not have been sold in the international market unless payment could be demanded outside of Venezuela. The district court interpreted these statements to mean that "it was foreseeable and intended by Bandagro that payment on the Notes would be demanded in the United States because: the Notes are bearer notes and are freely transferable, they are written in English, and the amount is listed in United States dollars." *Id.*

the fundamental difference in the understanding of payment in these cases:  if it matters where the payment is demanded or from where the payment is demanded.  In other words, is the fact that a noteholder may go to a bank anywhere in the world to request payment the same as designating every location as a place of payment, an action that waives sovereign immunity as to every country in which a noteholder may take a note after its purchase?

The method by which a noteholder may demand payment of the Notes at issue seems complicated.  The noteholder goes to its bank and asks the bank to demand payment.  Using a series of wires, the bank requests payment from a Venezuelan bank and receives the payment in that bank.  The payment is then wired back to the noteholder's bank.  Essentially, the bank uses wire transfers to act as the noteholder's proxy in going to Venezuela and requesting payment, which makes sense; it would be extraordinarily inefficient to require noteholders to purchase a plane ticket in order to request payment on their notes.[3]

It seems likely that the bonds would not be easily negotiable internationally if a noteholder had to go to the country that issued the note in order to demand payment. However, it is incredible that a country issuing notes would, under any circumstances, waive its sovereign immunity in every country in the world in which a noteholder could take the notes and find a bank to act as its proxy without expressly so stating in the note. Such a waiver is far too broad to read into a document.  Our laws presume sovereign immunity; unless there is an obviously implicit waiver, we ought not to create such an unwieldy exception to this important protection.  To so find would gut the laws of sovereign immunity.

Thus, I disagree with the majority and would find that, while a noteholder may request that a bank anywhere in the world demand payment on its behalf, this does not waive Venezuela's sovereign immunity.  The effect on the United States is not direct

---

[3]This situation is different from that discussed in *Weltover*, where the funds could be requested from a bank in New York—the payment was not actually being paid out of the country of origin. *Weltover*, 504 U.S. at 618.

because it is not "an immediate consequence of the defendant's activity" as required by *Weltover*. It was a consequence of Skye's choice of the United States and the choice of an American bank as its proxy to acquire the payment from the Venezuelan bank—not of Venezuela's express or implied waiver of sovereign immunity.

I therefore respectfully dissent from the majority's holding that this Court has jurisdiction to consider this claim.