**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 5, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

THEODORE L. HANSEN;
INTERSTATE ENERGY; TRIPLE M,

    Plaintiffs - Appellants,

v.

PT BANK NEGARA INDONESIA
(PERSERO),

    Defendant - Appellee,

and

NATIVE AMERICAN OIL
REFINERY COMPANY; EKO
BUDIWIYONO; FIRMANSYAH;
GATOT SISMOYO; RACHMAT
WIRIATMAJA; YOPIE LAMONGE;
MAX NIODE; LILLES
HANDAYANI; UTTI KARIAYAM;
MUBARIK AS DJATIMUDA; STEVE
O.Z. FINKEL-MINKIN, a/k/a Steve
Finkel; ROBERT MCKEE; FRED
NEWCOMB; NEWCOMB &
COMPANY,

    Defendants.

No. 12-4053

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:06-CV-00109-DB-PMW)**

Barnard Madsen, (Matthew R. Howell and Joseph M. Hepworth of Fillmore, Spencer, L.L.C., with him on the briefs), Provo, Utah, for Appellant.

Orlee Goldfeld of Hollyer, Brady, L.L.P. (and Arthur B. Berger of Ray, Quinney & Nebeker, P.C., Salt Lake City, Utah, on the brief), New York, New York, for Appellee.

---

Before **KELLY**, **McKAY**, and **HOLMES**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Plaintiffs-Appellants Theodore L. Hansen, Interstate Energy Corp. and Triple M, L.L.C., appeal from the district court's judgment in favor of Defendant-Appellee PT. Bank Negara Indonesia (Persero) Tbk. ("BNI"). BNI is a banking corporation established under the laws of Indonesia. Plaintiffs sued BNI and various other defendants based on BNI's refusal to honor certain bank guaranties and letters of credit. Eventually, the district court granted BNI's motion for summary judgment for lack of jurisdiction under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1604 ("FSIA"). Hansen v. Native Am. Oil Refinery Co., No. 2:06-CV-109, 2012 WL 567191 (D. Utah Feb. 21, 2012). Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

Mr. Hansen owned gas stations, convenience stores, and other businesses in

Utah, Idaho, and Wyoming. Aplt. App. 185. In 2003, he decided to sell these assets and related liabilities to Defendant Native American Refinery Company ("NARCO") for $50 million. Id. at 185–88. To secure its obligations, NARCO provided various BNI financial instruments. See id. at 188, 192–93, 1093, 1096, 1098 (describing a total of eight bank guaranties); id. at 191–92, 1097–98 (describing twenty-six different standby letters of credit). Some of these instruments secured Mr. Hansen's obligations to Triple M. Id. at 193, 953–57. The rest, however, secured NARCO's obligations to Mr. Hansen and to Interstate Energy, which Mr. Hansen owned. Id. at 188, 191–92, 967–1015.

Prior to the issuance of these guaranties, NARCO had never been a BNI customer, and Mr. Hansen had no experience with bank guaranties. See id. at 675–76, 694, 697, 899. But Mr. Hansen and others made various efforts to confirm these instruments. For example, Mr. Hansen searched a purported BNI website—which no longer exists—to see if the names of the bank officers on the guaranties matched those on the website. Id. at 581 (Hansen Dep.). Mr. Hansen also spoke by telephone with individuals he believed to be BNI employees Dr. Firmansyah and Eko Budiwiyono. Id. at 581, 583. According to Mr. Hansen, they confirmed the Bank's relationship with NARCO and the guaranties. Id. at 60, 581, 583. In none of these attempts to confirm the guaranties, however, did any individual explicitly validate any of the financial instruments as authentic BNI paper. Id. at 582, 708–09.

NARCO's CEO, Defendant Steve O.Z. Finkel-Minkin, NARCO's president, Defendant Robert McKee, and Triple M manager Mark McDougal corroborated this account. Id. at 1173, 566, 587. Finally, after Mr. Hansen attempted to use the financial instruments to secure another line of credit, Merrill Lynch employee Quinn Jensen contacted the BNI New York office to determine the authenticity of the instruments. Id. at 556, 558. During each call with BNI, the bank confirmed that a guaranty number Mr. Jensen provided was consistent with BNI guaranty numbers generally, but responded that the bank would have to see an actual certificate before confirming authenticity. Id. at 556–58. Merrill Lynch eventually decided not to extend the line of credit to Mr. Hansen. Id. at 1049–50.

Ultimately, NARCO failed to meet its obligations, and creditors foreclosed on the assets. Id. at 192, 1095. When Mr. Hansen contacted BNI, BNI refused to make payment and denied issuing or authenticating any of the instruments. Id. at 193, 225. BNI submitted fifteen declarations by individuals whose names and purported signatures appear on the guaranties denying issuance and authenticity. Id. at 242–45; see also id. at 247–48, 254–56, 266–67, 277–83, 289–91, 297–99, 306–07, 314–15, 321–22, 328, 339–40, 348–51, 356–58, 365–66, 370–72. One Indonesian resident, Eko Budianto, however, declared that, on behalf of NARCO, he helped facilitate the bank guaranties and letters of credit issued by BNI and spoke with various BNI employees when doing so. Id. at 1215–18. Mr. Budianto was not employed by BNI. Id. at 902, 915–16.

Plaintiffs sued BNI on February 6, 2006 based on its refusal to honor its alleged financial instruments. Id. at 38–55. BNI invoked the FSIA based on its relationship with the government of Indonesia. Specifically, BNI argued that it had not engaged in any commercial activity with Plaintiffs because all of the financial instruments at issue were fraudulent. Id. at 382–406. On October 3, 2008, BNI filed a motion for judgment on the pleadings that was denied. Id. at 239–41. An appeal followed, and this court affirmed. See Hansen v. PT. Bank Negara Indonesia (Persero) Tbk., 601 F.3d 1059 (10th Cir. 2010). A protracted period of jurisdictional discovery followed during which time Plaintiffs took no depositions of BNI or its employees and obtained different counsel, and the district court denied another motion by BNI for judgment on the pleadings. See Hansen, 2012 WL 567191, at *3–4.

In opposition to the summary judgment motion, Plaintiffs relied mainly upon Mr. Budianto's declaration, Aplt. App. 1215–18, although they had not previously disclosed this witness nor made him available for deposition. Aplee. Supp. App. 22–23; see also Hansen, 2012 WL 567191, at *7. The district court held that Plaintiffs did not satisfy their burden of production under the FSIA and there was no genuine issue of material fact as to whether BNI was subject to the district court's jurisdiction under the Act's commercial activity exception. See Hansen, 2012 WL 567191, at *8.

Discussion

We review de novo the district court's determination of its subject matter jurisdiction under the FSIA. Southway v. Cent. Bank of Nigeria, 328 F.3d 1267, 1272 (10th Cir. 2003). When reviewing this determination on a motion for summary judgment, we look at the record and draw all reasonable inferences in favor of the nonmoving party. See Sierra Club v. El Paso Gold Mines, Inc., 421 F.3d 1133, 1146 (10th Cir. 2005). A party cannot rely entirely on pleadings, but must present significant probative evidence to support its position. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element with respect to which he has the burden of proof, judgment as a matter of law is appropriate. Shero v. City of Grove, 510 F.3d 1196, 1200 (10th Cir. 2007). We review the district court's evidentiary rulings at summary judgment for abuse of discretion. Milne v. USA Cycling Inc., 575 F.3d 1120, 1133 (10th Cir. 2009).

FSIA provides the exclusive basis for obtaining jurisdiction over claims against a foreign state or its instrumentalities in the United States. See Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 611 (1992). Under the FSIA, a foreign state and its instrumentalities are immune from suit in American courts unless a statutory exception to immunity applies. 28 U.S.C. § 1604; see id. § 1603(a). The parties agree that BNI, as majority-owned by the government of Indonesia, qualifies as a foreign state under the FSIA, and as such, it is

- 6 -

presumptively immune.  Aplt. Open. Br. 21–22; Aplee. Br. 4–5.  Under FSIA's

burden shifting analysis, however, once a defendant establishes that it is a foreign

state entitled to immunity, the plaintiff bears the burden of production to make an

initial showing that a FSIA exception to immunity applies.  Orient Mineral Co. v.

Bank of China, 506 F.3d 980, 991 (10th Cir. 2007).  If the plaintiff carries its

initial burden, the defendant ultimately must prove by a preponderance of the

evidence that the claimed exception does not apply.  Id. at 991–92.

An exception to foreign sovereign immunity exists when the state or its

instrumentalities are engaged in "commercial activity."  28 U.S.C. § 1605(a)(2).

FSIA allows federal courts to exercise jurisdiction over foreign states when such

states engage in certain "commercial activities," with direct effects in the United

States.  Id.  Plaintiffs rely upon this exception and were required to produce

significantly probative evidence that BNI engaged in the commercial activity at

issue in this case.

The district court held that plaintiffs did not satisfy their burden of

production under the FSIA.  Hansen, 2012 WL 567191, at *4.  Specifically, it

held that the bank guaranties representing BNI's commercial activity were not

sufficiently authenticated, that the statements of Dr. Firmansyah and Mr.

Budiwiyono were hearsay, and that the declaration of Mr. Budianto, who

allegedly assisted in obtaining the guaranties, was not sufficiently detailed to

show that it was based on personal knowledge.  Id. at *5–8.  Plaintiffs challenge

these holdings and the ultimate conclusion, and we take up their arguments in turn.

A.    Are the Guarantees Assumed Valid?

Relying on a Sixth Circuit case, Plaintiffs argue that the district court was required to assume the guaranties were validly issued by BNI for the purpose of determining jurisdiction.  See Aplt. Open. Br. 24–25 (citing DRFP L.L.C. v. Republic Bolivariana de Venezuela, 622 F.3d 513 (6th Cir. 2010)).  In DFRP, the plaintiff was the holder of two notes allegedly issued by the government of Venezuela but which Venezuela refused to honor on the grounds they were forged.  622 F.3d at 515.  In denying Venezuela's motion to dismiss, the court explained, "Despite Venezuela's insistence that the notes are forgeries, we must assume, for purposes of deciding the jurisdictional issues before us, that they are valid."  Id.

We are not persuaded.  When the Sixth Circuit assumed the validity of the notes, it was in the context of a motion to dismiss.  See id. at 514–15.  Assuming validity based on allegations in a complaint is different from assuming it when it is challenged on summary judgment.  See DRFP L.L.C. v. Republica Bolivariana de Venezuela, No. 2:04-cv-793, 2009 WL 414581, at *1 (S.D. Ohio Feb. 13, 2009).  Of course, on summary judgment, we do not rely solely on pleadings.  Compare Fed. R. Civ. P. 56(c) with Fed. R. Civ. P. 12(d).  Moreover, Plaintiffs never raised this argument before the district court, and it is therefore waived.

See Cummings v. Norton, 393 F.3d 1186, 1190 (10th Cir. 2005).

B.     Are the Bank Guaranties Self-Authenticating?

Plaintiffs also argue that because the guaranties are self-authenticating, the district court was presented with sufficient evidence of BNI's commercial activity. They contend that the guaranties are self-authenticating (1) as commercial paper, (2) because they bear BNI's watermark, and (3) as publications of public authority. See Aplt. Open. Br. 18, 25–28 (citing Fed. R. Evid. 902(9), (7), (5); Utah Code Ann. § 70A-3-104(1)).

Again, Plaintiffs did not raise these arguments before the district court and have waived them. See Cummings, 393 F.3d at 1190. We do not find any exceptional reason to consider them. See In re C.W. Mining Co., 625 F.3d 1240, 1246 (10th Cir. 2010).

C.     Are the Statements About the Telephone Conversations Sufficiently Authenticated?

Plaintiffs next argue that there was sufficient evidence that Dr. Firmansyah and Mr. Budiwiyono were agents of party-opponent BNI and that the district court erred in finding that their alleged statements during various telephone conversations were inadmissable hearsay. See Fed. R. Evid. 801(d)(2) (describing admissions by party-opponents as non-hearsay). Plaintiffs rely on evidence about how the telephone number for BNI was obtained, that calls were answered purportedly by BNI representatives, and that the conversations related

to business one would expect to be conducted over the phone.  See Aplt. Open.

Br. 18–19, 28–32.  Plaintiffs contend that Rule 901(b)(6) or 902(5) establishes

that the statements were made by someone at or on behalf of BNI such that they

are admissible under Rule 801(d)(2).

Again, we are not persuaded.  Generally, "[Fed. R. Civ. P.] 56 precludes

the use of inadmissible hearsay testimony in depositions submitted . . . in

opposition to, summary judgment."  Lancaster v. Indep. Sch. Dist. No. 5, 149

F.3d 1228, 1236 (10th Cir. 1998) (quotation omitted).  When an otherwise

inadmissible hearsay statement is made by a party-opponent, however, it may be

admitted under Rule 801(d)(2).  In order to qualify as an admission by a party-

opponent, Plaintiffs must establish that it was made by the party or that the party

adopted or authorized it.  Fed. R. Evid. 801(d)(2).  Neither Rule 901(b)(6) nor

Rule 902(5) gets us there.

Rule 901(b)(6)(B) provides that a telephone call to a business is

authenticated if there is evidence that a person placed a call to a telephone

number assigned by the telephone company to that particular business and the

subject of the telephone call related to business that is reasonably transacted over

the telephone.  See Fed. R. Evid. 901(b)(6)(B) & cmt.  On a purported BNI

website that no longer exists, Mr. Hansen found a phone number and he—or

someone with whom he worked—called it.  Aplt. App. 581.  Mr. McKee, Mr.

McDougal, and Mr. Finkel-Minkin had similar experiences.  See id. at 1173, 566,

- 10 -

587. Plaintiffs admit that "there is no evidence in the record that the telephone number called . . . was the number assigned by the telephone company to BNI." Aplt. Open. Br. 31. Without additional evidence, Rule 901(b)(6) cannot be used to establish that these statements were made by anyone at, or on behalf of, BNI. Therefore the district court did not abuse its discretion in concluding that Dr. Firmansyah and Mr. Budiwiyono could not be considered party-opponents on this ground.

Plaintiffs nevertheless argue that the website should be considered self-authenticating pursuant to Rule 902(5) and that the statements made during calls to a number on that website are therefore admissible. Aplt. Open. Br. 31 & n.6. We disagree. The rule provides that "[a] book, pamphlet, or other publication purporting to be issued by a public authority" is self-authenticating. Fed. R. Evid. 902(5). A website of a foreign bank does not fall squarely within the language of this rule. See, e.g., id. 902(5) cmt. ("Dispensing with preliminary proof of the genuineness of purportedly official publications [is] most commonly encountered in connection with statutes, court reports, rules, and regulations . . . ."). Moreover, a telephone number retrieved from a website in these circumstances does not have the sufficient indicia of reliability that justifies the self-authentication exceptions in the first place. See id. 902 cmt. Generally, Rule 902 eases Rule 901's requirements of authentication where the possibility of fraud, forgery, and mis-attribution of certain documents is slight. This is hardly

the case here. We therefore conclude that the district court did not abuse its discretion in excluding the telephone conversations as inadmissible hearsay.

D.    Was the Budianto Declaration Based on Personal Knowledge?

Plaintiffs argue that they established a foundation for personal knowledge, and the district court erred in excluding the Budianto Declaration given Mr. Budianto's alleged meetings and telephone conferences with specified BNI officials. See Aplt. Open. Br. 19, 32–36. In particular, Plaintiffs point out that Mr. Budianto claims to know certain individuals as BNI officials, that he met with them in Indonesia, that he spoke with them over the phone, and that he was involved with guaranties issued to NARCO. See Aplt. App. 1215–18.

His statements are not so clear. Rule 602 states: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. Although affidavits are entirely proper on summary judgment, the content or substance of the evidence contained therein must be admissible. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 327 (1986); Thomas v. Int'l Bus. Machs., 48 F.3d 478, 485 (10th Cir. 1995); see also Fed. R. Civ. P. 56(c)(4) ("[The affidavit] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). "Under the personal knowledge standard, an affidavit is inadmissible if

'the witness could not have actually perceived or observed that which he testifies to.'" Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1200 (10th Cir. 2006) (quoting United States v. Sinclair, 109 F.3d 1527, 1536 (10th Cir. 1997)).

Mr. Budianto was not employed by BNI. Aplt. App. 902, 915–16. Nor did he personally know the various bank officials despite the fact he claims to have met them in Indonesia. Aplee. Supp. App. 24–25. He also was not present when the purported BNI guaranties were issued. Aplt. App. 1217–18. This certainly makes it questionable whether he could have actually perceived or observed the events or documents in question. See Sinclair, 109 F.3d at 1536. The district court found that the statement in the declaration that came the closest to establishing a foundation was:

> As an agent of NARCO in Indonesia, I received funds from various parties, paid on behalf of NARCO, for the issuance of these bank guarantees. I paid those funds by submitting the fund to the appointed officials representing the collateral owner and they further depositing them into BNI Bank accounts as directed by Dr. Firmansyah through their bank officers, for issuance of these guarantees.

Hansen, 2012 WL 567191, at *7. The district court nevertheless concluded that the statement did not satisfy Rule 602 as it fails to give the most basic of details about the actual deposit. Id.

This is not an abuse of discretion. See Argo, 452 F.3d at 1200. The declaration is woefully short on details about the transaction, and it is not clear to

- 13 -

whom the "collateral owner" refers. Even assuming it is NARCO, the paragraph does not explain how Mr. Budianto has any personal knowledge concerning the disposition of the funds. See Aplt. App. 1215–18. This lack of detail provides no information about the deposits that might authenticate the financial instruments. See Aplee. Supp. App. 19–24. Contrary to Plaintiffs' assertions, requiring evidence to establish personal knowledge of these transactions does not graft additional requirements of admissibility to Rule 56. We think the district court got it right in concluding that the information provided lacks an adequate foundation and therefore would be inadmissible.

Two additional points deserve mention. First, although Plaintiffs rely almost exclusively on Mr. Budianto's declaration to establish a genuine issue of material fact, they failed to disclose Mr. Budianto to BNI, see Aplt. App. 1318–22, 1307–1314, in violation of Fed. R. Civ. P. 26(a). Plaintiffs have not provided substantial justification for this failure. See Fed. R. Civ. P. 37(c)(1). Second, attached to Mr. Budianto's declaration are completely different versions of the financial instruments previously relied upon the Plaintiffs. See Aplt. App. 1271–72; compare id. at 1219–25 with id. at 1358–80. Although Plaintiffs argue that the inconsistent evidence is permissible and that these are additional bank guaranties issued to NARCO, see Aplt. Reply Br. 6–8, this does not seem plausible coming this late in the litigation. Regardless, this argument was not made before the district court and is inconsequential to our conclusion that the

district court did not abuse its discretion in finding the Budianto Declaration inadmissible for lack of foundation.

E.      Did the District Court Correctly Apply the Summary Judgment Standard?

Finally, Plaintiffs argue that the district court erred in excluding the Budianto Declaration because it impermissibly made a credibility determination, weighed evidence, and drew inferences adverse to Mr. Hansen. See Aplt. Open. Br. 19–20, 36–38 (citing Liberty Lobby, 477 U.S. at 254). For example, Plaintiffs cite the district court's statement that "the declaration's credibility is so suspect that the declaration itself may constitute a fraud on the court" as an improper credibility determination. Hansen, 2012 WL 567191, at *7; see Aplt. Open. Br. 37. Plaintiffs maintain that the declaration alone raises a genuine dispute of material fact that should have prevented summary judgment. Aplt. Open. Br. 36.

Plaintiffs are undoubtedly correct that a judge may not make credibility determinations on summary judgment. The Supreme Court made clear in Liberty Lobby that "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." 477 U.S. at 254. However, like BNI, we read the district court's statement as prompted by the obvious lack of foundation provided and the manner in which the statement was procured. See Aplee. Br. 43. Regardless, the district court's admonition is dicta and unnecessary to its holding.

Because Plaintiffs failed to provide significant probative evidence of BNI's commercial activity to raise a genuine issue of material fact, the district court did

- 15 -

not err in granting summary judgment to BNI.

AFFIRMED.