NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0247n.06

Case No. 13-5493

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Apr 01, 2014

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JACQUELINE KEY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| SHELBY COUNTY, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: BATCHELDER, Chief Judge; SILER and CLAY, Circuit Judges.

**SILER, Circuit Judge.** Jacqueline Key brought suit pursuant to 42 U.S.C. § 1983 against Shelby County alleging that the Shelby County Sheriff's Office (the "SCSO") and its law enforcement officers violated her Fourth Amendment rights when they executed a search warrant in her home. The district court denied her leave to file a sur-reply to Shelby County's motion for summary judgment and then granted Shelby County summary judgment on all claims. Key appeals both decisions. For the reasons that follow, we AFFIRM the rulings of the district court.

**BACKGROUND**

After receiving information that Teska Key, Jacqueline Key's husband, was a distributor of marijuana in the Memphis area, SCSO deputies lawfully stopped his vehicle in 2008. Upon questioning from the SCSO deputies, Teska admitted to transporting five pounds of marijuana in

the trunk of his vehicle and consented to a search of the vehicle. The officers found the marijuana, arrested Teska, and, based on his arrest, obtained a state warrant to search his home.

A number of SCSO deputies, including Lieutenant J. Setliff and Lieutenant Reginald Hubbard, arrived at the Key residence that same day to execute the warrant, using a key Teska provided to enter when no one answered the door. They found two minor children inside and removed them from the residence during the search. The officers seized marijuana, drug paraphernalia, devices used to assist in selling drugs, cash, and a handgun. Later, Jacqueline Key arrived at the residence to check on her children and informed detectives that she understood they were searching the house because of her husband's drug activities.

Key alleges that SCSO deputies ransacked and damaged her home during the search, and claims that the officers ate her food, drank her beverages, and played with her sex toys. Shelby County, through the affidavits of Lt. Setliff and Lt. Hubbard, contests these allegations. Key further alleges that the officers herded her children out of the home and forced them to wait in the cold weather in what amounted to excessive force, intimidation, mistreatment and arrest. Shelby County argues that removing the children from the home was lawful and appropriate under the circumstances. Finally, Key's affidavit states that SCSO deputies removed $17,775 in cash from her home, rather than the $9,155 reported on the return of warrant.

Key, acting *pro se*, sued Shelby County and a number of SCSO officers in 2009. After the district court dismissed the individual officers as defendants, counsel for Key filed a notice of appearance in 2010. On June 8, 2011, Shelby County filed its motion for summary judgment. Key responded on July 25, 2011, and Shelby County filed its reply on August 22, 2011. Almost six months later, on February 21, 2012, Key filed a motion for leave to file a sur-reply. On

March 27, 2013, the district court denied Key leave to file a sur-reply and granted Shelby County's motion for summary judgment dismissing each of Key's claims.

## DISCUSSION

### A. Denial of the Motion for Leave to File a Sur-reply

Key first contends that the district court should have granted her leave to file a sur-reply. We review a denial of a motion for leave to file a sur-reply for abuse of discretion. *See Eng'g & Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010) (finding that the district court abused its discretion in denying leave to file a sur-reply); *Tanielian v. DaimlerChrysler Corp.*, 108 F. App'x 386, 387 (6th Cir. 2004) (holding that the district court did not abuse its discretion in refusing to consider the sur-reply).

Key based her motion for leave to file a sur-reply on the fact that when Shelby County filed its motion for summary judgment, she was unrepresented, but after she obtained counsel and filed her response, Shelby County presented new evidence in its reply that she wanted to address. This argument is inaccurate.

First, when Shelby County filed its motion for summary judgment, Key had been represented by counsel for nearly a year. Second, while Shelby County attached two affidavits to its reply brief, it did not offer new evidence or arguments in the filing. Federal Rule of Civil Procedure 6(c)(2) states that "any affidavit supporting a motion must be served with the motion." Accordingly, "reply affidavits that respond only to the opposing party's brief are properly filed with the reply brief." *Peters v. Lincoln Electric Co.*, 285 F.3d 456, 476 (6th Cir. 2002). Shelby County filed reply affidavits that merely responded to Key's arguments presented in her response brief; the affidavits did not supply new evidence material to any of Key's claims.

On appeal, Key argues that while the federal rules do not provide for the filing of a sur-reply, neither do they provide for the filing of a reply, and because she did not oppose Shelby County's filing of a reply, she should have been entitled to file a sur-reply. However, the Local Rules for the Western District of Tennessee do permit the filing of reply briefs without leave of the court. W.D. TENN. LOCAL R. 56.1(c). And that Key did not oppose Shelby County's reply does not translate into a right to file a sur-reply, especially given that filing reply briefs is such a common practice in civil litigation.

Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially "[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated." *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003). However, as already noted, Shelby County presented no new evidence or arguments in its reply brief necessitating response.

Even if the reply did introduce new evidence or arguments, Key's contention that her motion for leave should have been granted is incorrect. The district court ultimately ruled that in the absence of any Federal Rule or Local Rule providing for the filing of a sur-reply, Key's unexplained delay of six months in moving for leave to file the sur-reply justified its denial. Key claims that her motion for leave was not untimely, because the Federal Rules of Civil Procedure exact no time limitations on the filing of sur-replies. However, as explained in *Seay*, the district court must "accord[] an adequate opportunity to respond to the new evidence presented with [the moving party's] reply briefs." *Id.* at 481. *Seay* only mandates that the district court provide an adequate opportunity to respond, not an indefinite opportunity to respond. The district court waited six months to deliver its decision on the motion, leaving Key plenty of time to file her

motion for leave. Considering the amount of time that passed between Shelby County's filing of its reply brief and Key's filing of her motion for leave to file a sur-reply, the district court did not abuse its discretion in denying the motion.

## B. Grant of Motion for Summary Judgment

Key's second claim of error on appeal concerns the grant of summary judgment in favor of Shelby County. We review the district court's summary judgment grant *de novo*, and apply the same standards for summary judgment as the district court. *Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 796 (6th Cir. 2013).

In order to hold a municipal entity like Shelby County liable for constitutional deprivations under 42 U.S.C. § 1983, the court must determine "(1) whether [Key's] harm was caused by a constitutional violation, and (2) if so, whether [Shelby County] is responsible for that violation." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). To prove that Shelby County is responsible for the alleged violations, Key must "(1) identify the municipal policy or custom, (2) connect the policy to [Shelby County], and (3) show that [her] particular injury was incurred due to the execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). In sum, Key must connect the alleged constitutional violations to an official SCSO policy or custom. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978).

Key alleges the following constitutional violations: (1) SCSO conducted an unlawful search of her home pursuant to a defective warrant; (2) SCSO deputies herded her minor children outside and forced them into the cold weather, which constituted excessive force, intimidation, mistreatment, and arrest; and (3) SCSO deputies ransacked her home, ate her food, drank her

beverages, and played with her sex toys.[1]  Key alleges that two different official policies or customs caused her injuries.  First, she asserts that SCSO failed to adequately supervise the actions of its officers in implementing proper and non-abusive search and arrest procedures.  A failure to supervise claim can constitute an official policy or custom where the failure to supervise amounts to deliberate indifference.  *See Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246–48 (6th Cir. 1989).  In her complaint, Key claims that this SCSO policy or custom exhibits deliberate indifference to abusive tactics regarding the search, arrest, and treatment of black citizens.  Second, in her reply brief filed before this court, Key implies that SCSO had an official policy of permitting a deputy, who had been the subject of a federal investigation into illegal conduct concerning official raids and searches, to participate in searches despite awareness that he was under investigation.[2]

The district court ruled that Key failed to identify a municipal policy or custom that was the "moving force behind the alleged violations," other than that Shelby County employed alleged violators, and municipal entities cannot be held liable on a respondeat superior theory. *Monell*, 436 U.S. at 691, 694.  Key's response to the district court's conclusions is incomplete. She argues on appeal that genuine issues of material fact exist concerning whether and for how long SCSO was aware that a deputy, who was convicted for violating a detainee's rights, was participating in searches and arrests, and whether and to what extent SCSO officers ransacked

---

[1] We question whether any of these satisfies the first element of municipal liability, in that Key fails to establish that SCSO officers committed these acts and that each rises to the level of a constitutional violation under these circumstances.  Indeed, nothing in Key's affidavit even purports to be based on her personal knowledge.  Nevertheless, because we find that Key cannot link the alleged constitutional violations to an official SCSO policy or custom, we decline to analyze these issues.

[2] We acknowledge that it is unclear whether Key presents this policy for the first time on appeal. However, the district court addressed the investigation into the deputy in its opinion, suggesting that it, and perhaps the parties, read Key's affidavit as making such an argument.  Accordingly, we address the policy here.

her home. She claims that the basis for the motion for summary judgment was that she should not be believed, and that she never actually witnessed the unlawful acts of the deputies. However, these arguments, even if true, do not overcome the inadequacies in Key's case: she is unable to show that Shelby County is responsible for the alleged violations.

As to the first policy, Key alleges that SCSO failed to supervise the implementation of proper search and arrest procedures in such a way as to amount to deliberate indifference to the abusive tactics of deputies regarding their treatment of African Americans. Key offers no evidence that SCSO deputies exhibited any pattern of behavior wherein they acted unlawfully, inappropriately, or with deliberate indifference toward African American citizens. *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 815–16 (6th Cir. 2005) (finding that without evidence of similar constitutional violations, the plaintiff could not show deliberate indifference, because the county was not on notice of the danger of those violations); *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 512–13 (6th Cir. 1996) (holding that because the county was not confronted with a widespread pattern of constitutional violations, the plaintiff could not show the county's deliberate indifference). Key presents virtually no support for this alleged policy other than the allegation in the complaint that the policy exists; even her affidavit is silent on the issue.

Moreover, Key cannot show that SCSO failed to supervise its deputies in the proper implementation of search and arrest procedures. She presents no evidence to further this allegation and offers no meaningful response to Shelby County's defense to this claim that SCSO official policies in fact teach proper search and arrest techniques. As explained in the affidavits of E. Wayne Goudy, Commander of the SCSO Narcotics Unit, Lt. Setliff, and Lt. Hubbard, SCSO implements policies regarding the training and supervision of deputies, including specific instruction on searches and seizures, and the Narcotics Unit undergoes additional training on the

law governing searches and seizures. The SCSO deputies are subject to frequent evaluations of their performance and may be disciplined for violations of these policies, including criminal prosecution where applicable. Key offers no argument to cast doubt on the district court's conclusion that SCSO properly supervised its deputies in arrest and search and seizure procedures. She failed to carry her burden of establishing municipal liability regarding this policy.

Turning to the policy of permitting a now-convicted felon deputy to conduct searches,[3] Key essentially asserts that SCSO failed to act to prevent the constitutional violations. Under the "inaction theory," a plaintiff must show the existence of a clear pattern of unlawful behavior, notice or constructive notice on the part of the county, the county's tacit approval of the unlawful behavior amounting to deliberate indifference and an official policy of inaction, and that the county's inaction was the moving force behind the constitutional deprivation. *Claiborne Cnty., Tenn.*, 103 F.3d at 508. In her reply brief, Key essentially admits that she is unsure whether this policy exists; she seeks more time to develop the record and to inquire into how long SCSO knew of the investigation. This circuit has said that "[a] municipality can be shown to have a 'custom' causing constitutional violations, even if that custom was not formally sanctioned, provided that the plaintiff offers proof of policymaking officials' knowledge and acquiescence to the established practice." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). Key has not established that SCSO had knowledge of the deputy's unlawful conduct, or that if SCSO had such knowledge, it would have permitted the deputy to participate in the search of her home.

---

[3] On October 15, 2009, SCSO deputy Jeff McCall entered a guilty plea to a two-count information charging him with depriving two individuals of their civil rights, in violation of 18 U.S.C. § 242.

Even if SCSO was aware of the federal investigation, and this awareness without prohibiting the deputy from continuing to serve as a law enforcement officer could be considered a municipal policy or custom, the existence of this policy does not establish Shelby County's liability here. The complaint supporting charges against Teska Key and the affidavits of Lt. Setliff and Lt. Hubbard appear to show that Jacqueline Key was not present during the search of her house, and Key does not refute this fact. Therefore, she cannot say whether the discredited deputy committed any constitutional violation while conducting the search. She is unable to connect any constitutional violation to a recognizable municipal policy or custom.

AFFIRMED.