NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0357n.06

Case No. 15-4242

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jun 29, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| HENRI SOLARI, Individually, and on behalf of all other persons similarly situated; GERARD CARNABY; CHARLY DUPUIS, Individually, and on behalf of all other persons similarly situated, | ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| GOODYEAR TIRE AND RUBBER COMPANY, | ) ) ) ) | |
| Defendant-Appellee. | ) | |

BEFORE: COOK and KETHLEDGE, Circuit Judges; SARGUS, District Judge.[*]

COOK, Circuit Judge. French plaintiffs allege they suffered injuries while working for a French company in its factory in France. They sued a United States company in the Northern District of Ohio, and the district court dismissed their case under the doctrine of *forum non conveniens*. Determining that the district court committed no abuse of discretion, we AFFIRM.

I.

Plaintiffs Henri Solari, Gerard Carnaby, and Charly Dupuis live in France. They allege that they were exposed to toxic substances while working for Goodyear Dunlop Tires France

---

[*] The Honorable Edmund A. Sargus, Chief United States District Judge for the Southern District of Ohio, sitting by designation.

(Goodyear France)—a French corporation—at its factory in Amiens. Carnaby claims he developed bladder cancer as a result of this exposure, while Solari says his eczema stems from his work at the factory as well. Dupuis currently has no illness, but asserts he "is at risk of developing health problems in the future due to his employment in the Amiens Factory."

Blaming Goodyear Tire & Rubber Company (Goodyear U.S.), Plaintiffs sued in the Northern District of Ohio.[1] They seek to represent a class of "at least 700 persons," "who were employed by [Goodyear France] at the Amiens Factory . . . between 1995 and the present date, and who have suffered, currently suffer, or may in the future suffer harm to their physical and/or mental health as [a] . . . result of [Goodyear U.S.'s] acts and omissions." Plaintiffs allege that Goodyear U.S. manufactured toxic products in the United States and compelled Goodyear France to use those products in Amiens, but failed to warn Plaintiffs of risks the toxic products posed or to provide adequate safety equipment. Plaintiffs assert numerous tort claims, as well as spoliation stemming from the Amiens Factory's disassembly.

Goodyear U.S. moved to dismiss for *forum non conveniens*, arguing that Plaintiffs' case belongs in France. Agreeing, the district court dismissed subject to four conditions on Goodyear U.S and denied Plaintiffs' motion to file a sur-reply to the dismissal motion as moot. Plaintiffs appeal both decisions.

II.

**A. Dismissal for *Forum Non Conveniens***

We review a dismissal on *forum non conveniens* grounds for abuse of discretion. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). Under the doctrine of *forum non conveniens*, a district court with jurisdiction and venue may nonetheless decline to exercise its jurisdiction in

---

[1]Goodyear U.S. is Goodyear France's corporate "grandparent."

the interests of justice and convenience. *Rustal Trading US, Inc. v. Makki*, 17 F. App'x 331, 335 (6th Cir. 2001) (citing *Howe v. Goldcorp Invs., Ltd.*, 946 F.2d 944, 945 (1st Cir. 1991)). A *forum-non-conveniens* analysis has three steps: decide the deference owed the plaintiff's forum choice, s*ee Wong v. PartyGaming Ltd.*, 589 F.3d 821, 830, 833 (6th Cir. 2009), then determine whether the defendant has established both "that an adequate alternative forum is available and that the public and private factors . . . demonstrate that the chosen forum is unnecessarily burdensome to [the] defendant or [the] district court." *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 523 (6th Cir. 2010) (citation omitted). When the district court considers "all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper*, 454 U.S. at 257 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511–12 (1947)).

### 1. Deference to Plaintiffs' Forum Choice

Ordinarily, a plaintiff's forum choice receives a strong presumption in its favor. *Piper*, 454 U.S. at 255. A foreign plaintiff's forum choice, however, "deserves less deference" because it "is much less reasonable" to presume the choice convenient. *Id.* at 256. Pointing to out-of-circuit cases, Plaintiffs argue that the district court abused its discretion by failing to state explicitly the amount of deference given to their forum choice, *see Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 634 (3d Cir. 1989), and by in fact giving their choice no deference, *see Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 46 (3d Cir. 1988).

But neither the Supreme Court nor this court requires a district court to state explicitly the amount of deference afforded a plaintiff's forum choice. In any event, the district court explained that "a foreign plaintiff's forum choice 'deserves less deference'" than a domestic plaintiff's, and that finding that a foreign plaintiff's "chosen forum would be burdensome . . . is

sufficient to support dismissal on grounds of *forum non conveniens*." The court thus explained both the deference it granted Plaintiffs' forum choice (less than a domestic plaintiff's) and the standard required to dismiss (burdensomeness).

### 2. Availability of an Adequate Alternative Forum

Before a court may dismiss for *forum non conveniens*, the defendant must show that an adequate alternative forum exists. *Zions*, 629 F.3d at 523. "Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Piper*, 454 U.S. at 254 n.22 (citing *Gilbert*, 330 U.S. at 506–07). In rare cases an alternative forum may provide a remedy so "clearly inadequate or unsatisfactory that it is no remedy at all"—for example "where the alternative forum does not permit litigation of the subject matter of the dispute." *Id.* at 254 & n.22. Unfavorable differences in law not rising to this level fail to undermine a forum's adequacy. *Id.* at 254–55.

Goodyear U.S. has repeatedly agreed to submit to French jurisdiction for the claims asserted in Plaintiffs' amended complaint. So unless Plaintiffs can show that France would decline jurisdiction or otherwise provides a "clearly unsatisfactory" remedy, Goodyear U.S. has shown an adequate alternative forum. *See Piper*, 454 U.S. at 254 n.22.

*Jurisdiction*. Plaintiffs argue that the district court should not have determined that French courts would hear Plaintiffs' claims. They cite their expert's declaration—by French law professor Bruno Dondero—to argue that under Article 42 of the French Code of Civil Procedure (French Code), a defendant's place of incorporation has jurisdiction over disputes and no exception applies here.

Goodyear U.S.'s expert—former French Supreme Court Justice Jean-Paul Béraudo— explains that, contrary to Professor Dondero's claim, multiple French courts have jurisdiction to

hear this dispute.  While Justice Béraudo agrees that jurisdiction is usually proper in the "place where the defendant lives," he observes that Article 46 of the French Code allows a plaintiff to sue in tort "before . . . the court of the place of the event causing liability or the [place where] the damage was suffered."  Because the events and damage from which Plaintiffs complain occurred in Amiens, the *tribunal de grande instance* there would have jurisdiction over this case. Additionally, to the extent Plaintiffs' claims target the work relationship, France provides the *tribunal des affaires de sécurité sociale* for "occupational disease claims," and the *conseil de prud'hommes* "for claims of other harm related to workplace injuries or exposures."

Plaintiffs also fail to grapple with extensive caselaw in which federal courts concluded that France offers an adequate alternative forum for similar claims.  *See, e.g.*, *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 606–07 (10th Cir. 1998) (products liability and wrongful death); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996) (negligence and products liability); *Marnavi Splendor GMBH & Co. KG v. Alstom Power Conversion, Inc.*, 706 F. Supp. 2d 749, 754–55 (S.D. Tex. 2010) (negligence, breach of contract, and breach of warranty); *Faurecia Exhaust Sys., Inc. v. Walker*, 464 F. Supp. 2d 700, 709–10 (N.D. Ohio 2006) (contract dispute).  And Professor Dondero's analysis ignores that Goodyear U.S. "has agreed to submit to French jurisdiction voluntarily," which Justice Béraudo explains prohibits French courts from sua sponte declining jurisdiction once Goodyear U.S. appears.  Plaintiffs fail to show that French courts cannot hear their case.

*Adequacy of Remedies.*  Next, Plaintiffs complain that French courts offer insufficient remedies because they lack class actions, procedural mechanisms to discover prospective class members, and injunctive relief for medical monitoring.  But the absence of class actions does not render an otherwise adequate forum inadequate.  *Wong*, 589 F.3d at 831.  It follows that the

absence of discovery to find prospective class members also cannot thwart France as an adequate alternative forum. As for medical monitoring, Justice Béraudo explains that France offers damages for anxiety and fear of future illness. But even if France lacked those remedies, it offers others such as damages for physical harm, which is enough. *See Piper*, 454 U.S. at 255 (observing that even though Scottish law precluded plaintiffs' "strict liability theory, and although their potential damages award may be smaller, there is no danger that they will be deprived of any remedy").

*Conditional Dismissal*. The district court dismissed Plaintiffs' complaint provided that Goodyear U.S.:

> (1) Consents to suit and acceptance of process in France in civil actions filed by the Plaintiffs on the claims stated in the First Amended Complaint; (2) [a]grees to make available any documents or witnesses within its control that are necessary for fair adjudication of a civil action brought in . . . France by the Plaintiffs on the claims stated in the First Amended Complaint; (3) [c]onsents to pay or perform any judgment or judgments rendered against it in France in a civil action brought by the Plaintiffs on the claims stated in their First Amended Complaint; and (4) [a]grees to waive any statute of limitations defense that did not exist prior to the institution [of] the action filed herein.

Plaintiffs argue that the district court should have included two additional conditions: make Goodyear U.S. agree to the dismissal conditions and allow Plaintiffs to re-file should French courts deny jurisdiction. In both its briefing on appeal and at oral argument, Goodyear U.S. agreed to comply with these conditions. It also agreed to abide by substantially similar conditions in a declaration filed with the district court. If Goodyear U.S. violates any of these conditions, Plaintiffs should move under Federal Rule of Civil Procedure 60(b) to revive this case in the Northern District of Ohio.

3. The Private and Public Factors

Courts weigh private- and public-interest factors to decide if a defendant has shown the chosen forum burdensome. *Piper*, 454 U.S. at 257–61. Plaintiffs argue the district court abused its discretion by concluding that these factors favor dismissal, and by not applying the factors to each of Plaintiffs' distinct claims. We consider each contention in turn.

a. Factor Application

(i) The Private-interest Factors

This court recognizes the following private-interest factors:

[T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate . . . ; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984) (quoting *Gilbert*, 330 U.S. at 508). A court may also consider the enforceability of a judgment in the foreign forum. *Id.* Here, the district court concluded that these factors "unite to weigh heavily in favor of dismissal." We agree.

France provides better access to sources of proof than does Ohio. As Plaintiffs acknowledge, "evidence of [their] harm" "[is] located in France," and Goodyear France stores documents regarding each of its employee's exposure to toxic chemicals in France. Also, because any exposure to toxic chemicals, warnings regarding chemicals, representations about health risks from work at the factory, and safety precautions taken occurred in Amiens, witnesses to this conduct likely reside in France. That many of these documents and witnesses will likely require translation to English further favors dismissal. *See Barak v. Zeff*, No. 06-14424, 2007 WL 1098530, at *4 (E.D. Mich. Apr. 12, 2007). And while Plaintiffs counter that the toxic

chemicals came from the United States and that Goodyear U.S. maintains records of the chemicals used at the Amiens factory in Akron, Goodyear U.S. has agreed to make evidence it controls available in France. *See Stewart v. Dow Chem. Co.*, 865 F.2d 103, 104–05, 107 (6th Cir. 1989) (determining that a defendant agreeing to produce documents under its control as a condition of dismissal supported dismissing for *forum non conveniens*).

The other private-interest factors also back dismissal. As for witness attendance, the number of potential third-party witnesses located in France—e.g., the 700 potential class members' doctors—coupled with the expense of transporting to and accommodating those witnesses in Ohio, counsels toward dismissal. *See Barak v. Zeff*, 289 F. App'x 907, 912 (6th Cir. 2008). So too does Goodyear U.S.'s pledge to pay or perform any judgment. Finally, the district court thought that "practical problems associated with administering a class of foreign nationals" weighed in favor of dismissal. Plaintiffs identify France's lack of contingency fees and a mechanism to discover class members as practical problems with that forum. As we have already explained, however, the lack of a mechanism to discover class members matters not. And because Plaintiffs are foreign, we give little weight to the increased financial burden that the lack of contingency fees imposes on them. *See Dowling*, 727 F.2d at 616.

(ii) The Public-interest Factors

Courts consider the following public-interest factors: "administrative difficulties . . . for courts when litigation is . . . in congested centers instead of . . . handled at its origin"; the burden of imposing jury duty on a community which has no relation to the litigation; ensuring cases that impact many persons are litigated "in their view and reach . . ."; the "local interest in having localized controversies decided at home"; and having courts at home with the law decide cases, "rather than having a court in some other forum untangle problems in conflict of laws, and in law

foreign to itself." *Gilbert*, 330 U.S. at 508–09. The district court concluded that "all of the public interest factors weigh in favor of dismissal." Again, we agree.

Plaintiffs argue Ohio has an interest in its courts deciding this case because they sued an Ohio corporation, and Goodyear U.S.'s wrongful conduct—decision making regarding both chemicals used in the manufacturing process and certain safety equipment—occurred in Ohio. But the location of Goodyear U.S.'s decision making simply cannot overcome that Plaintiffs present a controversy centered in France: they live in France, worked for a French company in a French factory, and suffered injuries in France. Indeed, when products or work conditions cause injuries, the place of injury has a greater interest in resolving any ensuing disputes than the place of corporate decision making. *Auxer v. Alcoa, Inc.*, 406 F. App'x 600, 605 (3d Cir. 2011); *Kryvicky v. Scand. Airlines Sys.*, 807 F.2d 514, 517 (6th Cir. 1986) (citing *Dowling*, 727 F.2d at 616); *see also Piper*, 454 U.S. at 260–61. Moreover, this case *relates to* and *most touches* the allegedly injured Amiens factory workers and the surrounding community.

### b. Applying the Factors to Plaintiffs' Distinct Claims

Citing *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006), and *Zions*, 629 F.3d at 526, Plaintiffs assert that the district court abused its discretion by applying the private- and public-interest factors to all their claims at once, instead of conducting a separate analysis of each "distinct claim[]," such as negligence, products liability, promissory estoppel, and spoliation.

In both *Duha* and *Zions*, this court reversed *forum-non-conveniens* dismissals because district courts failed to apply the private- and public-interest factors separately to multiple claims where proof of at least one of the claims largely depended on evidence in the United States. *Duha*, 448 F.3d at 870–71, 875–76, 879–81; *Zions*, 629 F.3d at 526. But in each case, the

district court dismissed after focusing on and analyzing only the claim most dependent upon evidence located in a foreign forum. *See Duha*, 488 F.3d at 880–81; *Zions*, 629 F.3d at 526. Without providing specifics, Plaintiffs assert that their various claims "clearly encompass different . . . sources of evidence," thus requiring separate analysis.

Though Plaintiffs present "distinct claims" in that they allege multiple causes of action, all Plaintiffs' claims arise out of events occurring at the Amiens factory. Plaintiffs' non-spoliation claims will largely require the same evidence: what chemicals individuals were exposed to, whether those chemicals caused harm, and the extent of that harm. While the spoliation claim requires different evidence than the other claims—i.e., evidence regarding the Amiens factory's dismantling—that evidence is in France. Thus, the *Duha* court's concern that a district court could "dismiss a plethora of convenient claims because it correctly dismissed one inconvenient claim," 448 F.3d at 879, is not present here. All Plaintiffs' claims are inconvenient in Ohio; the district court did not need to analyze each separately.

**B. Denial of Plaintiffs' Sur-Reply**

Finally, Plaintiffs challenge the district court's denial of their sur-reply as moot, which we review for abuse of discretion. *Modesty v. Shockley*, 434 F. App'x 469, 472 (6th Cir. 2011) (citing *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 480 (6th Cir. 2003)). They argue that because Goodyear U.S.'s reply to its motion to dismiss for *forum non conveniens* referenced new French law and its motion to dismiss for failure to state a claim raised new factual arguments, the district court should have allowed them a sur-reply. *See Key v. Shelby Cty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (noting a district court may allow a sur-reply to respond to new arguments made in a reply).

The French law allegedly first raised in Goodyear U.S.'s reply—"regulation . . . 44/2001"— was not "new": it appeared in both Justice Béraudo's first declaration and Professor Dondero's declaration in response.  And Goodyear U.S. made its allegedly new factual argument in its reply to its *separate* motion to dismiss for *failure to state a claim*, but the district court dismissed for *forum non conveniens*.  Plaintiffs fail to show the district court abused its discretion in denying their sur-reply.

III.

For these reasons, we AFFIRM.