RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0050p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

INSTITUTO MEXICANO DEL SEGURO SOCIAL,

*Plaintiff-Appellant*,

*v.*

No. 21-1112

STRYKER CORPORATION,

*Defendant-Appellee*.

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:19-cv-00857—Janet T. Neff, District Judge.

Argued: December 8, 2021

Decided and Filed: March 17, 2022

Before: BOGGS, THAPAR, and BUSH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Mark Edward Maney, MANEY LAW FIRM, Houston, Texas, for Appellant. D.
Andrew Portinga, MILLER JOHNSON, Grand Rapids, Michigan, for Appellee. **ON BRIEF:**
Mark Edward Maney, MANEY LAW FIRM, Houston, Texas, for Appellant. D. Andrew
Portinga, David J. Gass, Laci V. Reséndiz, MILLER JOHNSON, Grand Rapids, Michigan, for
Appellee. Andrew P. Tower, MANEY LAW FIRM, Houston, Texas, for Amicus Curiae.

───────────────

## OPINION

───────────────

JOHN K. BUSH, Circuit Judge. Instituto Mexicano del Seguro Social (IMSS) sued
Stryker Corporation in the Western District of Michigan, alleging a complex scheme in which

Stryker bribed Mexican government officials to facilitate the sale of its products in Mexico. The district court granted Stryker's motion to dismiss on the ground of forum non conveniens, and IMSS appealed. For the reasons below, we affirm.

## I.

IMSS is the main social-service agency of the Mexican government, responsible for government-run medical care for most Mexican citizens. It purchases medical supplies and products from private companies, while other arms of the government distribute these products to Mexican citizens. IMSS alleges that Stryker, through its Mexican subsidiary, Stryker Mexico S.A. de C.V. (Stryker Mexico), bribed Mexican officials to obtain contracts with the agency.

Stryker manufactures and sells medical devices. Its parent company is based in Kalamazoo, Michigan. It has subsidiaries around the world that distribute its products globally. IMSS sued Stryker in October 2019, alleging that between at least 2003 and 2015 Stryker bribed government officials and that the United States government has established the existence of that bribery in recent years. These bribes allegedly totaled tens of thousands of dollars. IMSS claims that the vehicle for the alleged bribes was a non-party Mexican law firm. Stryker disputes these allegations and believes that IMSS "mischaracterized the findings and outcomes" of the United States government's investigation of Stryker.

Stryker moved to dismiss on the ground of forum non conveniens, arguing that the Mexican judicial system was better suited to hear the case. IMSS disagreed, arguing that the United Nations Convention against Corruption (the Convention) forecloses the application of forum non conveniens and, alternatively, that the relevant factors favored hearing the case in the U.S. courts. The district court granted Stryker's motion to dismiss in January 2021. IMSS timely appealed.

## II.

We review a district court's dismissal for forum non conveniens for an abuse of discretion. *Associação Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 618 (6th Cir. 2018). This is a "highly deferential standard," *Doe v. Mich. State Univ.*, 989 F.3d 418,

426 (6th Cir. 2021), and we give "'substantial deference' to district-court decisions that get the process right[,]" *Prevent USA Corp. v. Volkswagen AG*, 17 F.4th 653, 658 (6th Cir. 2021) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)). Whether the Convention alters federal common law and forecloses the application of forum non conveniens, however, is a question of law, which we review de novo. *DRFP L.L.C. v. Republica Bolivariana de Venezuela*, 622 F.3d 513, 518 (6th Cir. 2010).

IMSS makes two primary claims on appeal: (1) that the Convention forecloses the application of forum non conveniens here, and (2) that the district court abused its discretion in dismissing for forum non conveniens. We address each in turn.

The Convention is a multinational treaty that attempts to unite its signatories against government corruption and encourages them to cooperate to root out such corruption. It was signed in December 2005 and ratified by the United States Senate shortly after. The relevant text of the Convention here is Article 53:

> Each State Party shall, in accordance with its domestic law:
>
> (a) Take such measures as may be necessary to permit another State Party to initiate civil action in its courts to establish title to or ownership of property acquired through the commission of an offence established in accordance with this Convention;
>
> (b) Take such measures as may be necessary to permit its courts to order those who have committed offences established in accordance with this Convention to pay compensation or damages to another State Party that has been harmed by such offences; and
>
> (c) Take such measures as may be necessary to permit its courts or competent authorities, when having to decide on confiscation, to recognize another State Party's claim as a legitimate owner of property acquired through the commission of an offence established in accordance with this Convention.

United Nations Convention against Corruption art. 53, *opened for signature* Oct. 31, 2003, 2349 U.N.T.S. 41 (entered into force Dec. 14, 2005). IMSS uses Article 53 to ask us to do something no American court has ever done—to hold that the Convention generally prohibits federal courts from applying forum non conveniens when a foreign state sues alleging corruption. Its argument is rife with issues.

Start with the text of the Convention itself.  *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1508–09 (2017).   IMSS argues that the Convention has plain language, binding on its signatories, that supersedes the doctrine of forum non conveniens.  Not so.  To be sure, the plain language of Article 53 requires that signatories "[t]ake such measures as may be necessary" for a foreign state to initiate an action.  Convention art. 53; *cf. Instituto Mexicano del Seguro Social v. Zimmer Biomet Holdings, Inc*., 518 F. Supp. 3d 1258, 1270 (N.D. Ind. 2021).   But those "measures" need only be taken "in accordance with [each signatory's] domestic law[.]" Convention art. 53.  Requiring that American courts be open to foreign states in cases that implicate the Convention does not require the alteration of established domestic legal frameworks that predate the Convention.

The district court did not take away IMSS's ability to "initiate an action."  It looked at the specific facts at hand and determined that Mexico was a more adequate forum for the suit to be heard.  IMSS has not lost the ability to vindicate its rights.  To the contrary, it sued and had its arguments heard in the district court, precisely as the Convention requires.  The requirement that American courts be available to foreign plaintiffs in corruption cases cannot be a requirement that foreign states win in our courts no matter the merits of their arguments.[1]  IMSS must play by the same rules as everyone else.

IMSS moves from the text of the Convention to selective quotations from the Senate Report discussing the Convention's ratification.  We are not convinced that legislative history has any relevance here.  But if it were pertinent, that history would not support IMSS's argument.  The Senate Report does note that "Article 53 requires each Party to allow other Parties to bring civil actions in its courts to recover property and to enable courts to award damages . . . ."  S. Exec. Rep. No. 109–18, at 5 (2006) (Senate Report).  But the same report specifically states that the Convention does not create any private rights of action, *id*. at 10, and explains that foreign claimants already had access to American courts before the Convention's ratification, *id*. at 3.  Indeed, the United States was "in compliance with Article 53" from the beginning.  *Id*. at 62.  Thus, the Senate Report noted that the United States "does not construe

---

[1]Although we do not find this case to be a close call, presumably a foreign-state plaintiff on different facts whose home courts were inadequate could overcome forum non conveniens concerns.

[the Convention] to require broadening or enhancing current U.S. law and practice in any way." *Id*. at 4.

IMSS also neglects to mention that most of the Convention is explicitly non-self-executing. *Id*. at 10 ("The United States declares that the provisions of the Convention (with the exception of Articles 44 and 46) are non-self-executing."). IMSS's appeal is based on Article 53, not Article 44 or 46. And IMSS has identified no implementing statute that turns the Convention into binding federal law. *See Medellín v. Texas*, 552 U.S. 491, 504–06 (2008). So its argument that the Convention forecloses the application of forum non conveniens fails.

Even when a district court has jurisdiction and venue, it may decline to exercise jurisdiction under the common-law doctrine of forum non conveniens. *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016); *see also Piper Aircraft Co.*, 454 U.S. at 257. We look to three factors in reviewing those decisions: "(1) whether an adequate alternative forum is available; (2) whether a balance of private and public interests suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court; and (3) the amount of deference to give the plaintiff's choice of forum." *Jones v. IPX Int'l Eq. Guinea, S.A.*, 920 F.3d 1085, 1090 (6th Cir. 2019). "[T]he central focus is convenience." *Prevent USA Corp.*, 17 F.4th at 658 (quoting *Piper Aircraft Co.*, 454 U.S. at 257).

Normally, "it makes sense to defer to a plaintiff's choice of forum based on an assumption that the plaintiff knows its self-interest better than anyone else and thus will choose a convenient forum." *Id.* at 660 (cleaned up). Deference is best viewed as a sliding scale. *Solari v. Goodyear Tire & Rubber Co.*, 654 F. App'x 763, 766 (6th Cir. 2016). And a foreign plaintiff like IMSS receives less deference to its choice of forum. *Prevent USA Corp.*, 17 F.4th at 660–61; *see also Hefferan*, 828 F.3d at 493 ("[A] foreign plaintiff's forum choice is usually accorded less deference because the assumption of convenience is 'much less reasonable.'"). IMSS chose not to litigate in its home forum. In such a case, the "convenience [of the forum] cannot be presumed[.]" *Stewart v. Dow Chem. Co.*, 865 F.2d 103, 106 (6th Cir. 1989).

IMSS argues that the district court abused its discretion by according its choice of forum little deference. Simply put, IMSS has sparse authority on its side. The district court considered

both sides' arguments and concluded that Stryker had the better of the arguments. That was not an abuse of discretion.

Even after deciding that IMSS's choice of forum receives little deference, there must be an alternative forum in which the case can be heard. And such a forum must be "available and adequate." *Jones*, 920 F.3d at 1090. We presume that a foreign court will be an adequate forum, only rendering it inadequate if a foreign legal system's "procedures and idiosyncrasies" are "so clearly inadequate that forcing a plaintiff to bring suit there would be unjust." *Hefferan*, 828 F.3d at 495. A forum is "available" if the defendant is amenable to service of process there. *Associação Brasileira*, 891 F.3d at 620.

Mexican courts are adequate. IMSS cannot overcome the high bar to proving a forum inadequate. Nor does the Mexican agency try to do so: "IMSS, of course, does not question the competency or integrity of Mexico's courts." Instead, IMSS focuses its arguments on the availability of Mexican courts to hear the dispute.

IMSS argues that "Stryker failed to provide any proof on the availability of Mexican courts to hear IMSS's claims against Stryker[.]" But Stryker provided an affidavit from its deputy general counsel stating that Stryker would submit to jurisdiction in Mexico and would not contest service of process there. IMSS does not contest that affidavit. And Stryker submitted two other affidavits, from Guillermo Iberio Ortiz Mayagoitia, a former Chief Justice of the Mexico Supreme Court of Justice, stating his beliefs that Stryker's consent to jurisdiction would be honored in the Mexican courts and that there are many other proceedings available for IMSS to alleviate its concerns about the Mexican court system. *See Associação Brasileira*, 891 F.3d at 621–22 (declining to find a forum "available" without guidance from legal experts). We cannot then see how Mexican courts would be unavailable on this evidence.

IMSS counters that "Mexican courts are historically reluctant to judge the foreign parents of Mexican corporations" and thus contends that Mexican courts are not available. This is inapt. It confuses Mexican courts' potential view of the merits with their availability to hear the dispute. The doctrine of forum non conveniens does not require that IMSS win in the alternative forum. It requires that the forum be adequate and available. And Mexican courts are both.

We finally examine "whether the plaintiff's choice of forum is unnecessarily burdensome." *Jones*, 920 F.3d at 1092.  The Supreme Court set out a list of private and public interests to consider in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947).  The private factors include access to evidence, mechanisms for ensuring participation of unwilling witnesses, costs of obtaining testimony from willing witnesses, opportunities to view the relevant premises, and other practical concerns such as cost and expeditiousness.  *Id.* at 508.  The public factors include the respective governments' interests in the dispute, the location of the injury, the condition of the involved court's docket, the location of the governing law, hesitation to apply foreign law, and avoidance of conflict-of-law problems.  *Id.* at 508–09; *Prevent USA Corp.*, 17 F.4th at 660.

IMSS spends much of its brief arguing that the district court did not balance the interests correctly.  But "it is not our role to rebalance the interests." *Jones*, 920 F.3d at 1093.  That "a different court may have given the factors different weight" does not mean that the district court's balancing here was unreasonable.  *Hefferan*, 828 F.3d at 498.

IMSS argues that the district court erred in balancing the public interests.  We disagree.  The district court thoroughly considered administrative difficulties, local interests, and the unfairness of burdening citizens in an unrelated forum with jury duty.  The district court also noted that it would likely have to apply Mexican law—two of IMSS's four claims were brought "solely under Mexican law" and the other two were brought both under "Mexican and United States law."  The court therefore agreed with Stryker's argument that the public interest factors favored dismissal because "[v]irtually all of the relevant acts—from allegedly paid bribes to IMSS officials, to alleged misconduct by a Mexican law firm—occurred in Mexico, and almost all of the alleged actors are in Mexico[.]"

Citing the Convention, IMSS argues that the district court "misjudged the United States' interests" and erred by concluding that the "United States has little interest in this matter."  But the district court acknowledged the United States' "interest in policing corporate activity and preventing bribery schemes such as the one alleged."  It simply found that Mexico's interest here is greater.  Indeed, contrary to IMSS's assertions, it is hard to imagine that Mexico's interest in this suit would be less than that of the United States.  IMSS is an arm of the Mexican government.  And it is alleging violations of Mexican law from activities that occurred in

Mexico and were facilitated by bribes paid to Mexican government officials. Mexico would seem to have a *greater* interest than the United States in rooting out corruption in Mexico and enforcing Mexican law. So the district court's balancing of the public interests in favor of Mexico to adjudicate the dispute was not an abuse of discretion. *Cf. Zimmer Biomet*, 518 F. Supp. 3d at 1269 ("Indeed, it would be a rare case in which Mexico had any greater interest to hear and decide a case than this one.").

Nor did the district court err in its balancing of the private interests. The district court thoroughly considered the relative ease of access to sources of proof, the availability of compulsory process for unwilling witnesses, the cost of obtaining attendance of willing witnesses, the possibility of viewing the premises, and practical concerns. It then concluded that the private-interest factors also favored dismissal.

IMSS devotes little time in its brief to these considerations, presumably because the district court considered the necessary factors and merely weighted them differently than IMSS would have. Mexico is the location of IMSS, the government officials alleged to have accepted bribes, most relevant witnesses, and Stryker's Mexican subsidiary. IMSS asserts that Mexican discovery processes are limited, but former Chief Justice Ortiz supported Stryker's claims and noted that there are multiple other avenues by which IMSS could obtain that discovery, including through administrative proceedings and the obtaining of evidence by authorities investigating corruption. The record shows that the district court did not abuse its discretion in balancing these factors.

### III.

The Convention does not foreclose the application of forum non conveniens. And the district court did not abuse its discretion when it concluded that IMSS's choice of forum receives little deference, that Mexican courts are available to hear this case, and that the public and private interest factors support Stryker. We affirm.